IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BRUCE SIMPSON                                                                                      PLAINTIFF

v.                              Civil No. 05-6012

MONTGOMERY GRIFFITH-MAIR, et al.                                                   DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the undersigned by orders of the district court (Docs. 7, 11, 12, 16, and 22) which referred to the undersigned (1) plaintiff's motion (Doc. 4) for summary judgment, (2) defendant John Parnell's motion (Doc. 8) to dismiss the case or alternatively to transfer the case, (3) defendant Parnell's motion (Doc. 13) to set aside default, and (4) defendant Parnell's motion (Doc. 15) to dismiss the case.

### I. Procedural Background

This action was initiated in the United States District Court for the Middle District of Pennsylvania in September 2004. After defendants Montgomery Griffith-Mair and John Parnell filed nearly identical motions to dismiss, the Pennsylvania court entered an order on December 13, 2004, which granted the motions to dismiss for lack of in personam jurisdiction and closed the case. In those motions, both defendants claimed that they resided "almost 1350 miles away from the District Court of the Middle Pennsylvania." At plaintiff's request, the court then entered an order vacating its previous order to dismiss the case transferring the case to this court, as Arkansas is the supposed residence of defendant Griffith-Mair. (Doc. 1.)

On April 4, 2005, the defendants' motions to dismiss for lack of jurisdiction which had been filed in Pennsylvania were dismissed as moot. Also, plaintiff's motions for summary

judgment, which had also been filed in the Pennsylvania prior to transfer, were dismissed as premature. (Doc. 3). The defendants were ordered to answer the complaint within ten days after receipt of the notice. (Doc. 3.)

On May 9, 2005, the plaintiff moved for summary judgment, arguing in part that the defendants had not complied with the court's order to answer the complaint within ten days. (Doc. 4.) On June 20, 2005, the undersigned signed an order directing the court clerk to enter default against the defendants who had been served (Doc. 9), and on June 23, 2005, default was entered against defendants Griffith-Mair, Parnell, and the Mexican National Catholic Church (Doc. 10). The court noted that the plaintiff's summary judgment motion would be construed as a motion for default judgment against the defendants. On June 21, 2005, defendant Parnell moved to dismiss the case on the basis of lack of evidence or alternatively transfer to Texas. (Doc. 8.) On July 7, 2005, Parnell moved to set aside the default, raising essentially the same claims as his earlier motion to dismiss. (Doc. 13.) The plaintiff responded to this motion. (Doc. 14.) On July 25, 2005, Parnell filed a second motion to dismiss the case. (Doc. 15.)

On August 2, 2005, a hearing was set for September 12, 2005 at 10:00 a.m. to hear arguments on Parnell's two motions to dismiss (Docs. 8 & 15) and his motion to set aside the default (Doc. 13), as well as plaintiff's motion for summary judgment (Doc. 4). (Doc. 17.) This notice was mailed to all parties at the addresses listed on the court's docket, and no mail was returned as undeliverable from the plaintiff or defendant Parnell. The notice was returned as undeliverable from defendant Griffith-Mair.

On August 26, 2005, the undersigned entered a report recommending that the unserved defendants be dismissed (Doc. 21), and this order has been adopted (Doc. 24).

AO72A
(Rev. 8/82)

On Monday, September 12, 2005, a hearing on the pending motions was held in Hot Springs, Arkansas. The plaintiff attended the hearing and presented testimony to the court. Defendant Parnell contacted court personnel approximately one hour before the beginning of the hearing, contending that he had received notice of the hearing the previous day. None of the defendants who had been served appeared at the hearing. (Doc. 23.)

## II. Factual Background

According to his complaint (Doc. 1) and his testimony at the motions hearing, plaintiff Simpson alleges the following.

Simpson is presently serving in the office of an archbishop of the Old Catholic Church, an organization that broke away from the Roman Catholic Church in 1898 and does not follow the direction of the Pope or the Vatican. The focus of the ministry of the Old Catholic Church is social issues. The plaintiff became affiliated with the church in 1994, and he resides in Hanover Township, Pennsylvania.

Beginning in June 2004, the defendants commenced a campaign to defame the plaintiff through the use of postings on the internet. Prior to June 2004, the plaintiff had never heard of the defendants, nor has he ever met any of the defendants in person. The defendants stated on various websites that the plaintiff was a child molester, that he had been forced to resign from a government job due to the child molestation, that the plaintiff was gay mafia member, and that he had trafficked in illegal aliens. The statements were made as though defendant Parnell was interviewed by defendant Griffith-Mair. These statements, according to the plaintiff, are false.

Defendant Parnell also began harassing the plaintiff by filing a complaint with the inspector general's office of the Department of the Treasury, which led to a six-month

investigation of the plaintiff and included involvement with the Federal Bureau of Investigation.

Plaintiff requested relief in the form of costs of $1107.00 (approximately $780.00 for the cost of the trip to Arkansas to attend the motions hearing, $150.00 for the filing fee, and approximately $170 in mailing costs), his medical co-pay of $500, and punitive damages of $1 million. Plaintiff claims that the stress caused by the defendants' actions caused him to suffer physically. He presented as evidence a September 8, 2005 letter from his cardiologist, Dr. Farook K. Shroff, which states that plaintiff suffers from arteriosclerotic cardiovascular disease, a history of PTCA with stenting, a history of hypertension, hyperlipidemia, and congestive heart failure. Dr. Shroff also states that stressful situations would increase plaintiff's blood pressure, may provoke episodes of angina, and would be detrimental to the plaintiff's health. This letter does not address whether plaintiff actually suffered any medical difficulties during the time that defendants were posting the defamatory statements about the plaintiff or that the plaintiff suffered any specific injury as a result of the defendants' actions. (Pl. Ex. 1.)

Plaintiff also requests that the court issue an injunction against the defendants enjoining them from further conduct similar to that alleged in his complaint, specifically that defendants be enjoined from printing, posting, or publishing claims that plaintiff is a child molester, that plaintiff was forced to resign from any employment because of he was molesting children, that plaintiff is involved in a gay mafia, or that plaintiff is involved in the trafficking of illegal aliens. Plaintiff noted at the hearing that he is not aware of any active websites that presently contain the defamatory information and are under the control of the defendants.

AO72A
(Rev. 8/82)

### III. Discussion

**Defendant Parnell's Motions**

The court sent notice on August 2, 2005, to all parties that the court would conduct a motions hearing on Wednesday, September 12, 2005, in Hot Springs, Arkansas. As noted above, the notice was not returned the court as undeliverable from defendant Parnell. At that time, Parnell had three motions pending before the court. (Docs. 8, 13, 15.) As Parnell failed to appear to prosecute his motions, such motions should be dismissed.

Even if the court were to consider Parnell's motions, the undersigned would recommend denying those motions. First, as the case was pending in the Middle District of Pennsylvania, Parnell entered an identical motion to defendant Griffith-Mair to have the case dismissed on the basis that he resided "almost 1350 miles away from the court." This distance is the approximate distance from Scranton, Pennsylvania to Hot Springs, Arkansas. Thus, Parnell has already acknowledged to the Middle District of Pennsylvania that this court has proper jurisdiction over him. The plaintiff is alleging that the defendants conspired to defame the plaintiff. According to the plaintiff, through telephone conversations, defendant Parnell related defamatory statements to be posted by defendant Griffith-Mair, and Griffith-Mair did post those statements on the internet through a computer located in Arkansas. There is no argument that at the time this case was transferred that this court had proper jurisdiction over defendant Griffith-Mair, who admitted to residing in the Western District of Arkansas. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) ("Because the long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent, our inquiry is limited to whether the exercise of personal jurisdiction comports with due process."). Defendant Parnell's alleged actions are sufficient to

invoke specific personal jurisdiction as the cause of action arises out of or relates to his activities in Arkansas. *See Dever*, 380 F.3d at 1073-74 (factors to consider include "(1) the nature and quality of [his] contacts with Arkansas; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of Arkansas in providing a forum for its residents, and (5) [the] convenience of the parties.") (internal quotation omitted). Therefore, if considered, the undersigned would recommend denying defendant Parnell's motions to dismiss claiming lack of jurisdiction.

Concerning his motion to set aside the default, Parnell contends that he was not informed of the "move of this case to Honorable Judge Bobby Shepherd, therefore [he] could not response without knowledge of the order to respond." The order for Parnell to file the answer was entered by Judge Robert Dawson, and nothing about motions in the case being referred to the undersigned prevented the defendant from timely filing an answer to the plaintiff's complaint. Therefore, even if the court were to consider defendant's motion to set aside the default, the undersigned would recommend denying that motion.

**Plaintiff Simpson's Motion for Default Judgment**

Under Arkansas law, a plaintiff who has been defamed may recover compensatory damages and punitive damages. *See e.g., United Ins. Co. of America v. Murphy*, 331 Ark. 364, 371-72, 961 S.W.2d 752, 756-57 (1998). A plaintiff in a defamation case is required to prove reputational injury in order to recover any damages. *See id.* at 370. This means that the plaintiff must prove that the defamatory statements were communicated to others and that the statements have detrimentally affected those relations. *See Ellis v. Price*, 337 Ark. 542, 549-50, 990 S.W.2d 543, 547 (1999). The establishing of actual damages does not, however, require proof of actual

out-of-pocket expenses. *See id.* To prove actual damages, plaintiffs have presented evidence in the form of testimonies of themselves and others of the negative reaction the defamatory statements caused others to have towards the plaintiff, *see e.g., Ellis*, 337 Ark. at 550; *United Ins.*, 331 Ark. at 371-72. Also, evidence has been presented to juries about the loss of employment opportunities and financial means as a result of the defamation. *See e.g., Northport Health Servs., Inc., v. Owens*, 356 Ark. 630, 643-44, 158 S.W.2d 164, 173 (2004).

Regarding punitive damages, Arkansas courts review jury awards for punitive damages considering "the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party." *See United Ins.*, 331 Ark. at 372. Punitive damages are properly awarded to penalize someone for conduct that is malicious or done with deliberate intent to injure another. *See id.* Punitive damages may only be awarded where there has been an award of compensatory damages. *See Hudson v. Cook*, 82 Ark. App. 246, 260, 105 S.W.3d 821, 830 (2003).

At the hearing, the plaintiff testified that some people asked him about the allegations that the defendants posted on the website, however the plaintiff did not allege that the defamatory statements caused a detrimental impact upon his relationships with any of those who supposedly read the statements. The plaintiff failed to prove at the hearing that he suffered an actual harm as a result of the defendants defamatory postings on the internet. Plaintiff does not claim to have lost employment or his religious position. Plaintiff did provide a letter from a cardiologist which indicates that plaintiff suffers from arteriosclerotic cardiovascular disease, a history of PTCA with stenting, a history of hypertension, hyperlipidemia, and congestive heart failure, and that stressful situations would increase plaintiff's blood pressure and may provoke episodes of angina

-7-

AO72A
(Rev. 8/82)

and would be detrimental to the plaintiff's health, however the plaintiff did not present any evidence to connect the defamatory statements and other actions taken by the defendants with a detrimental effect on his medical condition.

It is within the discretion of this court, as a fact-finder, to determine if compensatory damages are appropriate. *See* Fed. R. Civ. P. 55(b)(1) (determining appropriate default judgment); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1017 (8th Cir.1988) ("In a bench trial, ascertaining the plaintiff's damages is a form of factfinding that can be set aside only if clearly erroneous."); *see also United Ins.*, 331 Ark. at 371 (review of jury's determination of compensatory damages with whether verdict is so great as to shock conscience or demonstrate passion or prejudice). With the facts presented by the plaintiff at the hearing, an award of compensatory damages is not justified. Without an award of compensatory damages, this court may not award punitive damages to the plaintiff. Even if compensatory damages had been awarded, we would be reluctant to also award any punitive damages. There is no information as to the financial status of any defendant, and in fact, the plaintiff testified that it is his belief that defendant Griffith-Mair is currently a fugitive and possibly homeless. While the court does not question the malice behind the statements, this case appears to part of an on going feud among religious factions that seem to thrive on the insults and accusations that they propose about one another. Punitive damages are not appropriate.

**Plaintiff Simpson's Request for Injunction**

Plaintiff Simpson requests that this court grant his request for an injunction against the defendants. At the hearing, the plaintiff testified that the websites which originally published the material about him are no longer active, however he was unaware whether there may be other

websites being maintained by the defendants with the defamatory content. Thus, the plaintiff requests that an injunction be issued which would prohibit the defendants from further conduct of the type which led to this claim and specifically prohibiting the defendants from publishing allegations of the plaintiff having sexual involvement with minors.

The request for issuance of any injunction to cause the defendants to remove material from specific websites identified by the plaitniff is now moot, as plaintiff indicated that those websites are no longer active. *Cf. Delancy v. Arkansas*, 356 Ark. 259, 151 S.W.3d 301 (Ark. 2004) ("a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy"). As for plaintiff's request that the court issue an injunction prohibiting any future publication of defamatory statements, courts are reluctant to issue injunctive relief in cases of personal defamation. Adequate legal remedies are available though an action for damages. *See* W.E. Shipley, Annotation, *Injunction as Remedy Against Defamation of Person*, 47 A.L.R.2d 715 (2005) ("it appears to be clearly established by the large majority of the cases upon this question that equity will not grant an injunction against the publication of a personal libel or slander in the absence of some independent ground for the invocation of equitable jurisdiction"). One reason for this established rule is that injunctive orders which limit prospective speech run the risk of violating one's constitutional rights of free speech and free press. *See id., see also Willis v. O'Connell*, 231 F. 1004, 1009-15 (D. Ala. 1916). Should the defendants in this matter continue to publish defamatory statements about the plaintiff, the plaintiff would have recourse through future legal actions for damages against the defendants. Therefore, plaintiff's request for a permanent injunction should be denied.

AO72A
(Rev. 8/82)

**Costs**

Pursuant to Federal Rule of Civil Procedure 54(d)(1), "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." *See* Fed. R. Civ. P. 54(d)(1). The costs recoverable under Rule 54(d)(1) are enumerated in 28 U.S.C. § 1920. The following are recoverable costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts....

28 U.S.C. § 1920. The Court has "substantial discretion in awarding costs to a prevailing party under 28 U.S.C. § 1920 ... and [Rule] 54(d)." *See Richmond v. Southwire Co.,* 980 F.2d 518, 520 (8th Cir. 1992). "When an expense is taxable as a cost ... there is a strong presumption that a prevailing party shall recover it 'in full measure.'" *See Concord Boat Corp. v. Brunswick Corp.,* 309 F.3d 494, 498 (8th Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.,* 221 F.3d 449, 462, 468 (3d Cir. 2000), citing *Zotos v. Lindberg Sch. Dist.,* 121 F.3d 356, 363 (8th Cir. 1997)).

Plaintiff requested that the court award him costs for travel, filing fees, and mailing expenses. At the hearing, however, he only provided estimates of his costs and did not provide any documentation to support those estimates. Therefore, I recommend that the plaintiff be

directed to file a Bill of Costs with the court, itemizing the costs to which he contends he is entitled under Rule 54(d)(1) and 28 U.S.C. § 1920 and providing proper documentation for those costs.

### IV. Conclusion

Therefore, I recommend the following:

(1) denying defendant John Parnell's motion (Doc. 8) to dismiss the case or alternatively to transfer the case, defendant Parnell's motion (Doc. 13) to set aside default, and defendant Parnell's motion (Doc. 15) to dismiss the case;

(2) denying plaintiff Bruce Simpson's request for compensatory damages;

(3) denying plaintiff Bruce Simpson's request for punitive damages;

(4) denying plaintiff Bruce Simpson's request for an injunction;

and (5) directing plaintiff Bruce Simpson to provide a Bill of Costs to the court should he wish the court to consider an award of costs under Federal Rule of Civil Procedure 54(d)(1).

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of November 2005.

                                              **/s/ Bobby E. Shepherd**
                                              _____
                                              HON. BOBBY E. SHEPHERD
                                              UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)